UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Kiya Cunningham, | ) | C/A No. 6:24-cv-2616-TMC-WSB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Patricia Leaks Grant, John W. Grant Jr., Zipporia | ) | |
| Jacobs, Eunivesta Grant, Phebbie Grant, Brock | ) | |
| Rice, April Rice, Quenithia Grant Bush, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, proceeding *pro se* and *in forma pauperis*, brings this civil action against the above-named Defendants. Pursuant to 28 U.S.C. § 636(b), and Local Civil Rule 73.02(B) (D.S.C.), the undersigned United States Magistrate Judge is authorized to review the Complaint for relief and submit findings and recommendations to the District Court. For the reasons below, this action is subject to summary dismissal.

## BACKGROUND

**Procedural History**

Plaintiff commenced this action by filing a three-page document. ECF No. 1. Thereafter, Plaintiff filed a complaint on the standard form. ECF No. 1-1. The Court construed both Plaintiff's initial filing and the standard court form as the Complaint filed in this matter.

Upon initial review of Plaintiff's Complaint, the Court concluded that the action was subject to dismissal for lack of jurisdiction and failure to state a claim. ECF No. 12. However, the Court noted that Plaintiff might be able to cure the deficiencies of the Complaint by filing an

amended complaint and granted Plaintiff 21 days to file an amended complaint. *Id*. at 6–7. Plaintiff was warned as follows:

> If Plaintiff fails to file an amended complaint that corrects those deficiencies identified [in the Court's Order], this action will be recommended for summary dismissal pursuant to 28 U.S.C. § 1915 without further leave to amend.

*Id*. at 7 (emphasis omitted). Plaintiff twice requested an extension of time within which to file an amended complaint (ECF Nos. 14 and 18), and the Court granted her requests (ECF Nos. 15 and 19). Nevertheless, Plaintiff did not file an amended complaint within the time permitted.

On August 8, 2024, the Honorable Bristow Marchant[1] entered a Report and Recommendation (the "R&R"), recommending that the district court dismiss the action for lack of jurisdiction. ECF No. 23. Within the R&R, Judge Marchant opined that Plaintiff's standard form complaint listed an address in Fort Mill, South Carolina, as Plaintiff's address and also listed a South Carolina address for all named Defendants. *Id*. at 6 (citing ECF No. 1-1 at 2–3). Judge Marchant concluded that diversity of citizenship did not appear to exist in the case and that Plaintiff had not alleged a federal question claim. *Id*. at 6–7. Plaintiff filed objections to the R&R, along with a proposed First Amended Complaint, on September 23, 2024. ECF No. 31.

On October 27, 2025, the Honorable Timothy M. Cain entered a Text Order declining to adopt the R&R and committing the matter to the undersigned for further review. ECF No. 34. That Order explained as follows:

> Before the court is [the R&R] recommending this action be summarily dismissed for failure to allege facts sufficient to establish jurisdiction in this court. (ECF No. 23). Specifically, the magistrate judge found that although Plaintiff's complaint purported to assert claims in this court based upon diversity jurisdiction, (ECF No. 1 at

---

[1] The case was original referred to Judge Marchant but was later referred to the undersigned on October 28, 2025. ECF No. 37 (court only).

2), she provided South Carolina addresses for herself and every Defendant. (ECF No. 1 -1 at 23). Accordingly, the magistrate judge concluded that Plaintiff's own allegations failed to establish complete diversity in this case. (ECF No. 23 at 67). The magistrate judge noted that Plaintiff was afforded an opportunity to cure the deficiencies in her complaint but failed to do so within the time allowed despite receiving two extensions of time to do so. *Id.* at 2. Thus, the [R&R] recommends dismissal under FRCP 41 for failure to comply with court orders as an additional basis for dismissal. *Id.* at 2 n.2.

Plaintiff filed objections to the [R&R] stating that an elderly family member for which Plaintiff provides care required around the clock care which interfered with her ability to cure the deficiencies within the deadline to do so. (ECF No. 31 at 1). Appended to the objections is a proposed amended complaint alleging that Plaintiff has a Huntersville, North Carolina address, while all of the Defendants have South Carolina addresses. *Id.* at 5. The court notes that although Plaintiff's standard form attachment to her original complaint listed a South Carolina address, the actual complaint itself alleged Plaintiff is a citizen and resident of North Carolina. (ECF No. 1 at 2).

In light of these contradictory jurisdictional allegations and Plaintiff's failure to timely submit an amended complaint, the court finds no fault in the magistrate judge's findings and conclusions. However, in light of Plaintiff's *pro se* status and the allegation in her original complaint that she is a North Carolina resident, the court, out of an abundance of caution, respectfully declines to adopt the [R&R] (ECF No. 23) and recommits the matter to the magistrate judge for further review.

*Id.* After the matter was recommitted, the undersigned entered the following Text Order dated

October 29, 2025:

By Order dated May 23, 2024, Plaintiff was instructed to file an amended complaint. ECF No. 12. After Plaintiff did not file an amended complaint, [the R&R] was issued dated August 8, 2024, recommending summary dismissal of this action. ECF No. 23. On September 23, 2024, Plaintiff filed Objections to the R&R and also attached a proposed amended complaint to those objections. ECF No. 31. By Order dated October 27, 2025, the Honorable Timothy M. Cain declined to adopt the R&R based upon this proposed amended complaint and committed the matter to the undersigned.

3

ECF No. 34.  Accordingly, the Clerk of Court is directed to file on the docket Plaintiff's amended complaint contained within ECF No. 31 (pages 4 through 19) as the Amended Complaint in this matter.

ECF No. 39.  Plaintiff's Amended Complaint was entered on the docket that same day and is the operative pleading in this matter.  ECF No. 41.  This matter is before the Court for review of the Amended Complaint.[2]

**Factual Allegations**

Plaintiff makes the following allegations in the Amended Complaint.  ECF No. 41.  Plaintiff is the adult biological child of the late John Williams Grant Sr. ("John Sr."), and Defendants are interested parties to John Sr.'s Estate ("the Estate").  *Id.* at 1.  Plaintiff brings this action for purported torts and breaches of contract committed by Defendants causing injury to Plaintiff.  *Id.* at 2.  Specifically,

> Defendants defamed [Plaintiff] to others by stating that [Plaintiff] was not biologically related to John Sr.  Defendants also orchestrated a plan to conceal stolen assets in order to prevent a probate accounting.  Defendants stole assets from John Sr., falsified documents to gain control over John Sr.'s estate, and executed a theft of inheritance.  As a result of Defendants' campaign of lies and their hatred toward [Plaintiff], Defendants helped Patricia Leaks Grant, who had a lengthy grudge toward John Sr., obtain the position as personal representative of John Sr.'s estate in order to eliminate [Plaintiff] and other lineal descendants from their inheritance.

---

[2] An amended complaint replaces all prior complaints and should be complete in itself.  *See Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) ("As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect.") (citation and internal quotation marks omitted); *see also* 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1476 (3d ed. 2017) ("A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified.  Once an amended pleading is interposed, the original pleading no longer performs any function in the case . . . .").  Therefore, the Court considers only the allegations in the Amended Complaint.

*Id*. Plaintiff asserts that this Court has diversity jurisdiction over the claims asserted in the action, arguing that she is a citizen and resident of North Carolina while all Defendants are citizens and residents of South Carolina. *Id*. at 2–3. Plaintiff also alleges the amount in controversy exceeds $75,000. *Id*. at 3. Plaintiff identifies the following Defendants named in this action: Patricia Leaks Grant ("Patricia"), John W. Grant Jr. ("John Jr."), Zipporia Jacobs ("Zipporia"); Eunivesta Grant ("Eunivesta"), Phebbie Grant ("Phebbie"), Brock Rice ("Brock"), April Rice ("April"), and Quenithia Grant Bush ("Quenithia"). *Id*. at 2–3.

John Sr. passed away in 2021. *Id*. at 3. Patricia alleged she is the mother of John Sr.'s adult children—Zipporia, John Jr., Eunivesta, and Phebbie. *Id*. John Sr. and Patricia lived together in South Carolina from the 1960s until the 1980s, but ultimately parted ways and did not reconcile. *Id*. at 4. Patricia moved out of the home she shared with John Sr. *Id*. At some point, John Sr. was "brutally stabbed" by Phebbie. *Id*. Patricia moved into a home owned by Phebbie "where she has resided for many decades." Brock and April also alleged they were the adult children of John Sr. by a different mother than Patricia. *Id*. Plaintiff is the youngest adult child of John Sr. by a different mother, who had two biological children with John Sr.—Plaintiff and "Tassy." *Id*. Until John Sr.'s death, Plaintiff and Tassy maintained a close loving relationship with John Sr., who "always acknowledged that he was the biological father." *Id*.

Plaintiff believes John Sr.'s last will and testament was stolen as it could not be located upon his death. *Id*. After John Sr. died, John Jr. provided Plaintiff and Tassy with a small sum of money and stated that John Sr. said to give it to his children. *Id*. Plaintiff learned that Defendants took possession of John Sr.'s property to keep for themselves, ignoring his last will and testament. *Id*. John Sr. had hundreds of thousands of dollars in tangible and intangible assets. *Id*. Plaintiff confronted John Jr. about taking their father's assets before a proper accounting in the probate

court. *Id*. at 5. John Jr. told Plaintiff that he was not the only person taking things from the Estate and that other Defendants were taking things as well. *Id*. Defendants "rummaged through John Sr.'s home to get the first option at heirlooms, jewelry, cash, collection of all sorts of precious metals, and other valuables." *Id*.

Thereafter, Plaintiff opened the Estate with the Laurens County Probate Court (the "Probate Court") so that the Estate assets could be properly recorded. *Id*. Plaintiff also filed a petition to administer the Estate and notified "certain parties of her petition." *Id*. Approximately one month later, Patricia filed an application with the Probate Court stating she was the spouse of John Sr. and wished to nominate Quenithia to administer the Estate. *Id*. According to Plaintiff, John Sr. and Patricia had parted ways many decades prior and did not jointly own any assets together. Plaintiff also asserts that, despite Quenithia being listed as John Sr.'s child on his obituary, he was not her biological or adoptive father as she is the daughter of Zipporia, who is the daughter of John Sr. *Id*. Plaintiff explains she "knew her father did not engage in an incestuous relationship with someone who alleges to be his daughter and explained this to probate court officials." *Id*. at 6. Plaintiff filed an affidavit with the Probate Court regarding the situation. *Id*. Ultimately, Patricia's application for Quenithia to administer the Estate was denied. *Id*. Patricia's daughter, Eunivesta, called Plaintiff and indicated she knew about her court filings and asked her to "leave things alone" and "just get over" John Sr.'s death. *Id*.

Defendants then began operating John Sr.'s home as a business to collect rental income to enrich themselves and their families. *Id*. John Jr. told Plaintiff that John Sr. said John Jr. could have John Sr.'s truck, although Plaintiff did not believe this. *Id*. Plaintiff asserts the title to the truck was titled solely in John Sr.'s name, but John Jr. continued to operate the truck for his own personal use. *Id*. When the Probate Court "executed a hearing order to hear [Plaintiff's] petition

to administer the Estate," John Jr. surrendered the license plate of the truck to the Department of Motor Vehicles and parked the truck. *Id*.

The Probate Court held a hearing to rule on Plaintiff's petition to administer the Estate and also consider Patricia's competing petition to administer the Estate. *Id*. On April 28, 2022, Patricia testified at the hearing that she and John Sr. were together until his death and did not have any sort of separation, which Plaintiff asserts "was a lie." *Id*. According to Plaintiff, Patricia also "falsified court document[s]" stating she and John Sr. shared the same address and lived together until his death. *Id*. Plaintiff contends John Sr. and Patricia did not live together. *Id*. Plaintiff alleges she would have known if John Sr. and Patricia shared an address because she had a close loving relationship with her father, frequently visited him, and maintained consistent communication with him. *Id*. at 7. According to Plaintiff, she and John Jr. coordinated healthcare for their father and were both frequently in his home. *Id*.

After John Sr.'s death, John Jr. told Plaintiff that "he and the other Defendants did not care for Brok and April," and some people did not believe John Sr. was Brock's biological father. *Id*. Nevertheless, Defendants convinced Brock and April to join forces with them to support Patricia's falsified petition to administer the Estate and "conceal stolen assets from the Estate inventory, strengthen their position in front of the Probate Court, and object to [Plaintiff's] petition." *Id*. During Probate Court proceedings, Patricia claimed a Laurens County court determinate that John Sr. was the biological father of Brock and April and ordered child support when they were minors, although no documentation was submitted to verify that claim. *Id*. According to Plaintiff, the Laurens County Clerk of Court searched the records and confirmed that it could find no action listing John Sr. as a party. *Id*. at 8. Plaintiff asserts that Brock and April disappeared in the middle of the Probate Court proceeding, prior to cross examination and questioning about their paternity.

*Id.* Later in the Probate Court proceedings, Phebbie made statements that implied Plaintiff lied on her petition to the Court. *Id.* "Phebbie indicated that she never saw John Sr.'s children with Plaintiff's mother, when in fact, Phebbie's relationship with John Sr. was non-existent for many decades prior to his death and strained after she brutally stabbed him." *Id.*

While the Probate Court proceedings were pending and approximately one year after John Sr. died, John Jr. transferred the utility accounts into his name and applied John Sr.'s refund to his new account. *Id.* John Jr. "took steps ahead of Patricia's falsified testimony, to make it appear that he was the only heir or his actions would be supported by all heirs determined by the court." *Id.* According to Plaintiff, Patricia testified that she and John Sr. lived together and had not had any separation since the 1960s and that Plaintiff's mother did not have two biological children with John Sr. and that Plaintiff was not John Sr.'s biological child. *Id.* at 9. On April 28, 2022, John Jr. implied during court proceedings that John Sr. did not have two biological children with Plaintiff's mother. *Id.* He also stated he did not provide Plaintiff and Tassy with funds, despite previously testifying that he did provide Plaintiff and Tassy with funds following John Sr.'s death. *Id.* Patricia alleged that she paid for John Sr.'s funeral and that John Sr. did not have a bank account at the time of his death. *Id.* Patricia's attorney submitted this information to the Probate Court in a statement that read "The decedent did not have any accounts in his name at the time of his death." *Id.* Plaintiff asserts that, contrary to these assertions made to the Probate Court, Patricia did not pay for the funeral and John Sr. did have open and active bank accounts in his name at the time of his death. *Id.* Plaintiff also contends that John Sr. did not jointly own anything with Patricia or allow her to act as an authorized person for any of his business-related affairs. *Id.*

During the Probate Court proceedings, Quenithia, who was convicted of fraud, testified that Patricia and John Sr. lived together and had not separated prior to his death. *Id.* According

8

to Plaintiff, "Quenithia's criminal history alone raised legitimate concerns regarding her truthfulness, credibility, and motives . . ." and "Quenithia grew up without a father, and she projected her issues, derived from her own absentee father onto [Plaintiff]." *Id*. During the Probate Court proceedings, Quenithia's mother, Zipporia, was "hostile and aggressive, shouting incoherent obscenities at [Plaintiff] to intimidate her from speaking the truth." *Id*. at 10. Patricia, by committing fraud on the Probate Court, secured the position to administer the Estate and eliminated Plaintiff's proper share of her inheritance. *Id*. Plaintiff asserts that all Defendants engaged in a deliberate course of conduct designed to interfere with Plaintiff's inheritance and enrich themselves and defamed Plaintiff to others. *Id*. According to Plaintiff, she learned of a social media post created by Quenithia "to taunt [Plaintiff] about the Defendants' perceived victory created through their improper actions in the Probate Court." *Id*.

Based on these allegations, Plaintiff asserts the following causes of action. For a first cause of action, Plaintiff asserts a claim for defamation. *Id*. at 12. For a second cause of action, Plaintiff asserts a claim for intentional interference with inheritance. *Id*. at 12–13. For a third cause of action, Plaintiff asserts a claim for civil conspiracy. *Id*. at 13. For a fourth cause of action, Plaintiff asserts a claim for fraud. *Id*. at 13–14. For a fifth cause of action, Plaintiff asserts a claim for breach of fiduciary duty. *Id*. at 14–15. For a sixth cause of action, Plaintiff asserts a claim for negligence per se. *Id*. at 15–16. For her relief, Plaintiff seeks money damages. *Id*. at 16.

## STANDARD OF REVIEW

Plaintiff filed this action pursuant to 28 U.S.C. § 1915, the *in forma pauperis* statute, which authorizes the district court to dismiss a case if it is satisfied that the action "fails to state a claim on which relief may be granted," is "frivolous or malicious," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Further, this Court

possesses the inherent authority to review a *pro se* complaint to ensure that subject matter jurisdiction exists and that a case is not frivolous, even if the complaint were not subject to the prescreening provisions of 28 U.S.C. § 1915. *See Mallard v. U.S. Dist. Court*, 490 U.S. 296, 307–08 (1989) ("Section 1915(d) . . . authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision."); *Ross v. Baron*, 493 F. App'x 405, 406 (4th Cir. 2012) ("[F]rivolous complaints are subject to dismissal pursuant to the inherent authority of the court, even when the filing fee has been paid . . . [and] because a court lacks subject matter jurisdiction over an obviously frivolous complaint, dismissal prior to service of process is permitted.") (citations omitted); *see also Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) ("[D]istrict courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *Ricketts v. Midwest Nat'l Bank*, 874 F.2d 1177, 1181 (7th Cir. 1989) ("[A] district court's obligation to review its own jurisdiction is a matter that must be raised *sua sponte*, and it exists independent of the 'defenses' a party might either make or waive under the Federal Rules."); *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1342 (9th Cir. 1981) (providing a judge may dismiss an action *sua sponte* for lack of subject matter jurisdiction without issuing a summons or following other procedural requirements).

Because Plaintiff is a *pro se* litigant, her pleadings are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the *pro se* pleading remains subject to summary dismissal. The mandated liberal construction afforded to pro se pleadings means that if the Court can reasonably read the pleadings to state a valid claim on which Plaintiff could prevail, it should do so, but a district court may not rewrite a petition to

10

include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct Plaintiff's legal arguments for her, *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). The requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

Although the Court must liberally construe the *pro se* pleadings and Plaintiff is not required to plead facts sufficient to prove her case as an evidentiary matter in the Complaint, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (explaining that a plaintiff may proceed into the litigation process only when his complaint is justified by both law and fact). "A claim has 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 388 (4th Cir. 2014).

## DISCUSSION

**Claims Against Patricia Grant**

Plaintiff has named Patricia as a Defendant, and she grounds many of her claims on the conduct of Patricia as the administrator of the Estate during the course of the Probate Court proceedings. However, the Court takes judicial notice that Patricia died on December 17, 2024. *See* Obituary of Patricia Leaks Grant, available at https://www.legacy.com

11

/us/obituaries/name/patricia-grant-obituary?id=57044424 (last visited Jan. 15, 2026).[3]
"Obviously, a deceased person cannot be served and respond to a lawsuit." *Laney v. S.C. Dep't of Corr.*, C/A No. 4:11-cv-3487-JMC-TER, 2012 WL 4069680, at *4 (D.S.C. May 8, 2012), *R&R adopted by* 2012 WL 4069590 (D.S.C. Sept. 15, 2012). If a party dies while a lawsuit is pending, and a claim is not extinguished by the death of the party, the proper party could be substituted under Rule 25. *See Greer v. McGregor*, C/A No. 8:10-cv-2219-HMH-BHH, 2010 WL 4922705 (D.S.C. Nov. 4, 2010). "Rule 25 is not applicable in this case, however, because Plaintiff sues a person who was already dead, and not a person who was a proper party and served with process prior to dying."[4] *Laney*, 2012 WL 4069680, at *4 (collecting cases). When a case is filed naming a deceased person as a defendant, "[a]t that point the purported action was a nullity, for a dead man obviously cannot be named party defendant in an action." *Chorney v. Callahan*, 135 F.Supp. 35, 36 (D.C.Mass. Oct. 19, 1955) (citation omitted). Here, even if Plaintiff cured this defect in an amended complaint by naming a defendant in place of Patricia who could be held liable, the Amended Complaint fails to allege facts to establish a claim for relief, as explained below, and Patricia therefore should be dismissed as a party defendant in this case.

---

[3] "Courts may take judicial notice of obituaries." *Crews v. Pfizer, Inc.*, C/A No. 2:21-cv-00868-RDP, 2021 WL 5040493, at *1 (N.D. Ala. Oct. 29, 2021). "Courts have taken judicial notice that a person is deceased based on an obituary published in a newspaper" or in online records that are not subject to reasonable dispute. *Beeman v. TDI Managed Care Servs., Inc.*, C/A No. ED-CV-02-1327-VAP-KKX, 2016 WL 11637594, at *12 (C.D. Cal. Nov. 10, 2016) (collecting cases); *see also United States v. Thomas*, No. 01-cr-058-KSH, 2022 WL 538540, at *3 (D.N.J. Feb. 23, 2022) (noting the court may take judicial notice of an obituary notice published online).

[4] Service of process has not been authorized in this case and Plaintiff's Amended Complaint, naming Patricia as a Defendant, was filed *after* Patricia died.

**No Jurisdiction to Review State Court Judgments**

Plaintiff may be challenging certain rulings and judgments made in the Probate Court related to the Estate. For example, Plaintiff appears to assert that Patricia was improperly named the administrator of the Estate by the Probate Court rather than Plaintiff. Plaintiff also appears to be dissatisfied with the disbursement of the Estate to various members of the decedents' family. Thus, Plaintiff's allegations appear to challenge the Probate Court rulings, even though they are framed as state law tort claims.

Under the *Rooker-Feldman* doctrine, this Court may not review findings or rulings made by state courts. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983) (holding that a federal district court lacks authority to review final determinations of state or local courts); *Jordahl v. Democratic Party*, 122 F.3d 192, 199 (4th Cir. 1997). The *Rooker-Feldman* doctrine extends not only to issues actually decided by a state court, but also to those that are "inextricably intertwined with questions ruled upon by a state court." *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997). A federal claim is "inextricably intertwined" with a state court decision if "success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." *Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 857–58 (4th Cir. 2001). This prohibition includes constitutional challenges. *Curley v. Adams Creek Associates*, 409 F. App'x 678 (4th Cir. 2011).

The Supreme Court clarified the scope of the *Rooker-Feldman* doctrine in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005):

> The *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

13

*Id.* at 284; *see also Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006) ("*Exxon* requires us to examine whether the state-court loser who files suit in federal district court seeks redress for an injury caused by the state-court decision itself. If he is not challenging the state-court decision, the *Rooker-Feldman* doctrine does not apply."). Implicit in the doctrine is the recognition that only the United States Supreme Court has jurisdiction over appeals from final state court judgments. *Exxon*, 544 U.S. at 283; *see also* 28 U.S.C. § 1257.

Thus, to the extent the claims in Plaintiff's Amended Complaint are an attempt to challenge any rulings made by the Probate Court, such claims should be summarily dismissed for lack of jurisdiction under the *Rooker-Feldman* doctrine.

**Abstention is Proper for any Pending State Court Proceedings**

The Court should abstain from considering any claims related to any pending Probate Court proceedings. Plaintiff makes numerous allegations concerning the Probate Court proceedings. However, it is unclear from the Amended Complaint whether any proceedings in the Probate Court are ongoing at this time.

To the extent Plaintiff is seeking to challenge any currently pending Probate Court proceedings involving the Estate, such claims are barred by the *Younger* abstention doctrine. *See Younger v. Harris*, 401 U.S. 37 (1971). Because a federal court may not award relief that would affect pending state proceedings absent extraordinary circumstances, this Court should abstain from interfering with pending Probate Court proceedings.

In *Younger*, the Supreme Court of the United States of America held that a federal court should not equitably interfere with state court proceedings "except in the most narrow and extraordinary of circumstances." *Gilliam v. Foster*, 75 F.3d 881, 903 (4th Cir. 1996) (internal

quotation marks omitted). The *Younger* Court noted that courts of equity should not act unless the moving party has no adequate remedy at law and will suffer irreparable injury if denied equitable relief. *Younger*, 401 U.S. at 43–44; *see Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013) (explaining the circumstances when *Younger* abstention is appropriate). The Supreme Court has extended the *Younger* doctrine to apply in "'noncriminal judicial proceedings when important state interests are involved.'" *Harper v. Pub. Serv. Comm'n of W. Va.*, 396 F.3d 348, 351 (4th Cir. 2005) (quoting *Middlesex Cnty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

From *Younger* and its progeny, the United States Court of Appeals for the Fourth Circuit has culled the following test to determine when abstention is appropriate: "[1] there are ongoing state judicial proceedings; [2] the proceedings implicate important state interests; and [3] there is an adequate opportunity to raise federal claims in the state proceedings." *Martin Marietta Corp. v. Md. Comm'n on Human Relations*, 38 F.3d 1392, 1396 (4th Cir. 1994) (citation omitted). The first element is satisfied to the extent the Estate is involved in any ongoing proceedings in the Probate Court. The second criterion is also met, as the Fourth Circuit Court of Appeals has stated that matters concerning the probate process implicate important state interests: "[T]he law of probate, trusts, and estates—allocating the personal property of citizens—remains an important interest of the states for *Younger* purposes." *Harper v. Pub. Serv. Comm'n of W. Va.*, 396 F.3d 348, 352–53 (4th Cir. 2005); *see also Eveland v. Maryland*, C/A No. 1:16-cv-00762-CCB, 2016 WL 6780207, at *2 (D. Md. Nov. 16, 2016), *aff'd*, 691 F. App'x 111 (4th Cir. 2017) (noting that "[r]esolution of state probate matters is a vital state interest"). The third element is also satisfied, as Plaintiff has an adequate forum in the Probate Court to pursue her claims. *See, e.g., Eveland*, 2016 WL 6780207, at *2 (precluding review of challenged probate proceedings pursuant to

15

*Younger* abstention doctrine); *Gerard v. George*, C/A No. 7:25-cv-4276-DCC-WSB, 2025 WL 2164754, at *14 (D.S.C. May 30, 2025) (same), *R&R adopted by* 2025 WL 2164820 (D.S.C. July 30, 2025). A ruling in Plaintiff's favor in this case would call into question the validity of the Probate Court proceedings and would significantly interfere with those ongoing state proceedings. *See Younger*, 401 U.S. at 43–45; *Cinema Blue of Charlotte, Inc. v. Gilchrist*, 887 F.2d 49, 52 (4th Cir. 1989) ("[F]ederal courts should abstain from the decision of constitutional challenges to state action, however meritorious the complaint may be, 'whenever [the] federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests.'") (citation omitted); *Washington v. Tilton*, C/A No. 2:10-cv-997-HFF-RSC, 2010 WL 2084383, at *1 (D.S.C. May 19, 2010).

**_Colorado River_ Doctrine**

To the extent Plaintiff intends to assert claims related to any pending Probate Court actions, this Court also should abstain under the *Colorado River* doctrine. Even though federal and state courts may share concurrent jurisdiction with respect to a dispute, and federal courts should generally exercise jurisdiction, abstention is appropriate when exceptional circumstances warrant abstention in deference to the parallel state proceedings. *Dennis v. HSBC Mortg. Servs., Inc.*, No. CA 0:10-cv-2693-MJP-PJG, 2011 WL 3876916, at *3 (D.S.C. Aug. 11, 2011), *R&R adopted by* 2011 WL 3876909 (D.S.C. Aug. 31, 2011) (citing *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817–19 (1976)). In analyzing whether to abstain, courts should consider: (1) whether any court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained by the concurrent forums. *Moses H. Cone Mem'l Hosp. v. Mercy Constr. Corp.*, 460 U.S. 1, 15 (1983) (quoting *Colorado River*, 424 U.S. at 818-19); *Hunt v. Mortg. Elec.*

*Registration*, 522 F. Supp. 2d 749, 753 (D.S.C. 2007).   Additionally, the Court may examine "whether a federal question is presented in the case and whether either the state or federal lawsuit was a contrived, defensive reaction to the other."  *Hunt*, 522 F. Supp. 2d at 753 (citing *McLaughlin v. United Va. Bank*, 955 F.2d 930, 934–35 (4th Cir. 1992)).   In determining whether two actions are parallel, the Court should determine if substantially the same parties are attempting to litigate the same issues in different forums.  *New Beckley Min. Corp. v. Int'l Union, United Mine Works of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991).   "*Colorado River* does not demand that the parties be precisely identical."  *Accohannock Indian Tribe v. Tyler*, C/A No. SAG-21-cv-02550, 2021 WL 5909102, at *15 (D. Md. Dec. 14, 2021) (explaining "the presence of additional Defendants does not defeat the parallelism of the two actions on these facts").

In reviewing Plaintiff's Amended Complaint, it appears that Plaintiff may be involved, in some capacity, in pending South Carolina Probate Court proceedings.  Such proceedings, to the extent they remain pending, and this current federal court action could be properly viewed as parallel proceedings because they would likely involve the same parties and litigate the same issues.  It appears from the allegations in the Complaint that the Probate Court of South Carolina first assumed jurisdiction over the issues in question, and the South Carolina state courts have jurisdiction over the Estate and any probate matters.  Further, the Property subject to the Estate and probate proceedings is located in the state of South Carolina, which is the more convenient forum.  Moreover, it would be a more efficient use of judicial resources to have the issues presented in this case and any state court actions decided in one forum, particularly one that has been the forum for the underlying disputes between the parties to these actions.  Finally, this Court could decide a result contrary to the decisions made in the Probate Court.  Thus, this Court should refrain from exercising jurisdiction in this case under the *Colorado River* doctrine.

**The Probate Exception**

In addition to these abstention doctrines, the Court would also lack jurisdiction under the probate exception to the extent Plaintiff's Amended Complaint is attempting to litigate any claims related to probate matters involving the Estate. "The probate exception is a well-established, judicially-created exception to the exercise of otherwise proper federal jurisdiction" that "'reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court.'" *Bassford v. Bassford*, C/A No. 2:21-cv-02955-DCN, 2022 WL 669625, at *3 (D.S.C. Mar. 7, 2022) (citation omitted). The "probate exception" is a historical exception to federal jurisdiction that holds that "probate matters" are excepted from the scope of federal jurisdiction. *See, e.g., Marshall v. Marshall,* 547 U.S. 293, 308 (2006) (quoting *Markham v. Allen,* 326 U.S. 490, 494 (1946). In *Markham,* the United States Supreme Court held that federal courts have no authority to "interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." *Markham,* 326 U.S. at 494. In *Marshall,* the Supreme Court clarified the scope of the probate exception and explained that

> the "interference" language in *Markham* [is] essentially a reiteration of the general principal that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res.* Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court.

*Marshall*, 547 U.S. at 311–12 (citations omitted). "In context, then, the Supreme Court understands the probate exception to extend only to those situations where the federal court is asked to administer a probate matter or the exercise of federal subject matter jurisdiction would

disturb or effect the possession of property in the custody of a state court." *Long v. Blair*, 650 F. Supp. 2d 542, 548–49 (S.D.W. Va. 2009). "Thus, after *Marshall,* the probate exception bars the exercise of federal jurisdiction over two types of claims: (1) those seeking to probate or annul a will, or administer a decedent's estate; and (2) those seeking to dispose of property that is in the custody of the state probate courts." *Wellin v. Wellin*, C/A No. 2:14-cv-4067-DCN, 2015 WL 628071, at *4 (D.S.C. Feb. 12, 2015).

To the extent Petitioner is asking this Court to address any underlying claims in a probate matter involving the Estate—such as to administer John Sr.'s Estate or dispose of property in the custody of the Probate Court—this Court is precluded from doing so under the probate exception. Although Plaintiff couches her claims as state law tort claims, many of the allegations in the Amended Complaint pertain primarily to the Probate Court proceedings. To grant Plaintiff's requested relief, the Court would need to make determinations that would impact the administration of the Estate and distribute the Estate's assets. Thus, Plaintiff's claims fall within the probate exception as fully articulated by *Marshall* and *Markham*. Because Plaintiff appears to allege that the Probate Court issued improper rulings (such as appointing Patricia as administrator rather than Plaintiff and not awarding Plaintiff certain Estate assets), Plaintiff is asking this Court to address the underlying claims in the probate matter. Despite Petitioner's attempts to assert state law tort claims, the crux of this action is Plaintiff's request to have this Court interfere with or disturb the determinations made by the Probate Court and render a ruling favorable to Plaintiff as to the Estate and probate matters. This Court is precluded from doing so under the probate exception.[5] *See Donnelly v. Misiti*, C/A No. 8:19-cv-03291-BHH-JDA, 2019 WL 7938321, at *6

---

[5] The Court recognizes that "[t]he probate exception does not apply to bar federal jurisdiction over a 'widely recognized tort,' such as breach of fiduciary duty . . . [or] tortious

(D.S.C. Dec. 6, 2019) ("Plaintiff's claim fits within the probate exception and this Court lacks subject matter jurisdiction."), *R&R adopted by* 2020 WL 415898 (D.S.C. Jan. 27, 2020), *aff'd as modified*, 806 F. App'x 235 (4th Cir. 2020).

**Failure to State a Claim**

Certain of Plaintiff's claims may be precluded from this Court's review for the reasons above. Nevertheless, even if these abstention and jurisdictional doctrines did not apply to the claims in this case, the allegations presented in the Amended Complaint fail to state a claim for relief. The Court addresses each of Plaintiff's asserted claims in turn below.

### *Defamation*

Plaintiff's first claim is for defamation and appears to be asserted against all Defendants. ECF No. 41 at 12. Plaintiff alleges that Defendants "made false and defamatory statements about [Plaintiff] by impeaching her honesty, integrity, and reputation." *Id*. According to Plaintiff, Defendants made these false and defamatory statements to "numerous third parties, including, but not limited to, John Sr.'s friends, relatives, and various people in the community." *Id*. Plaintiff also asserts that "Defendants were offered to participate in a sibling DNA Testing and declined because they knew the truth about John Sr.'s biological children with Plaintiff's mother and wanted to spread lies to conceal items from the probate accounting so that they would not have to share the assets with [Plaintiff]." *Id*.

---

interference with a plaintiffs expected inheritance." *Brennan v. Sigmon*, C/A No. 2:19-cv-242, 2019 WL 8888175, at *4 (E.D. Va. Sept. 24, 2019). Thus, to the extent Plaintiff has set forth viable claims for such torts, they would not be barred under the probate exception. However, the probate exception would apply in this case as to any claims that seek to have this Court make determinations reserved for the state Probate Court.

"The essential elements of a claim for defamation under South Carolina law are: 1) a false and defamatory statement; 2) unprivileged publication to a third party by defendant; 3) fault on the part of the defendant publisher; and 4) actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Tharp v. Media Gen., Inc.*, 987 F. Supp. 2d 673, 678–79 (D.S.C. 2013) (citations omitted). There are two forms of defamatory communications: libel and slander. While slander is the spoken version of defamation, libel is written or accomplished by actions or conduct. *Lashley v. Spartanburg Methodist Coll.*, C/A No. 7:18-cv-2957-JD-KFM, 2021 WL 8014689, at *26 (D.S.C. Dec. 20, 2021) (citing *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 514 S.E.2d 126, 133-34 (S.C. 1999)), *R&R adopted by* 2022 WL 872604 (D.S.C. Mar. 24, 2022), *aff'd* 66 F.4th 168 (4th Cir. 2023).

The first element of a defamation claim has two parts—first, the plaintiff must allege a false statement was made; second, the plaintiff has to allege the statement was defamatory—that is, a communication which "tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Gregg v. Am. Coll. of Med. Genetics and Genomics*, C/A No. 3:22-cv-01218-MGL, 2023 WL 2047504, at *4 (D.S.C. Feb. 16, 2023); *Holtzscheiter v. Thomson Newspapers, Inc.*, 506 S.E.2d 497, 506 (S.C. 1998). Thus, "[t]he trial court must initially determine if the communication is reasonably capable of conveying a defamatory meaning." *Hughs v. Royal Energy Res., Inc.*, C/A No. 2:20-cv-01566-DCN, 2020 WL 6689132, at *3 (D.S.C. Nov. 12, 2020) (citing *Holtzscheiter*, 506 S.E.2d at 513). If the defamatory meaning of a message or statement is obvious on its face, the statement is defamatory *per se*; however, if the defamatory meaning is not clear unless the hearer knows the facts or circumstances not contained in the statement itself, then the statement is

21

defamatory *per quod*. *Id*. In cases involving defamation *per quod*, the plaintiff must introduce facts extrinsic to the statement itself to prove its defamatory meaning. *Id.*

The second element of defamation is met when defamatory matter is communicated, "intentionally or by a negligent act, to a third party—someone other than the person defamed." *Hughs*, 2020 WL 6689132, at *3 (citing *Holtzscheiter*, 506 S.E.2d at 507). However, "[a] complaint that does not 'state with specificity the time, place, medium, and listener of the alleged defamatory statements' fails to state a claim for defamation." *Hughs*, 2020 WL 6689132, at *3 (quoting *Doe v. Cannon*, No. 2:16-cv-00530-RMG, 2017 WL 591121, at *1 (D.S.C. Feb. 14, 2017)). A plaintiff asserting a defamation claim "is not entitled to wait until after discovery before pleading his causes of action properly[.]" *Colleton v. Charleston Water Sys.*, 225 F. Supp. 3d 362, 370 (D.S.C. 2016).

Here, Plaintiff's general allegations that Defendants, individually or collectively, made defamatory statements to various unspecified individuals are insufficient to establish a claim for defamation. The Amended Complaint describes two purported instances in which Defendants made defamatory statements.

First, Plaintiff contends that, in a social media post that was visible on April 28, 2022, "Quenithia mocked [Plaintiff], insinuating she suffers from some form of impairment, stating: 'IF YOU NEVER HEAL FROM WHAT HURT YOU, YOU'LL BLEED ON PEOPLE WHO DIDN'T CUT YOU.'" ECF No. 41 at 10. According to Plaintiff, other Defendants "commented to embolden [Quenithia's] insults" as follows: (1) Brock commented "100 agree"; (2) Patricia commented "SAY IT LOUD"; (3) Zipporia commented "Totally agree!!!"; and (4) John Jr. commented "NAILED IT." *Id*. However, these comments do not mention Plaintiff by name, nor do they describe her in any way such that any reader would understand them to be referring to

Plaintiff. The statements cited by Plaintiff are not on their face defamatory and Plaintiff has not plead extrinsic facts and circumstances that make the statements defamatory. *Holtzscheiter*, 332 S.C. at 530 n.19. The ambiguous statements noted by Plaintiff, which are facially unremarkable, are not sufficiently prejudicial towards Plaintiff's reputation to constitute defamation.

Second, Plaintiff contends that beginning in May 2022, "Defendants made false, defamatory statements about [Plaintiff] to John Sr.'s close friends and relatives in order to defame [Plaintiff] in her community."[6] *Id.* at 10–11. These statements are as follows: (1) John Jr. told relatives and John Sr.'s close friends that Plaintiff was "just money hungry" and that Plaintiff was not telling the truth about John Sr. being Tassy's father; (2) Zipporia told close relatives that Plaintiff cannot tell anyone who their children are and that was why she did not know the identity of her father; (3) Eunivista told relatives that Plaintiff could not be trusted because she does not know who anyone's father is, let alone her own father; (4) Quenithia told relatives that neither Plaintiff nor Tassy know the identity of their father; (5) Patriciate told relatives that if Plaintiff was John Sr.'s child, she would inherit something but she is not, which is why she is not receiving anything; (6) Brock told relatives that Plaintiff knows Tassy does not belong to John Sr. and should stop telling people that she does; and (7) Phebbie told relatives that Plaintiff believes she can get away with her untruths. *Id.* at 11.

---

[6] It is noteworthy that Plaintiff contends the statements presented in the Amended Complaint were made to John Sr.'s close friends and relatives (although she does not identify the names of those close friends and family members). The named Defendants all reside in or around Laurens County, South Carolina, which is also where John Sr. lived. Plaintiff, on the other hand, has vigorously argued that she lives in North Carolina, such that this Court has diversity jurisdiction. Plaintiff has not alleged facts showing that any Defendant made defamatory statements to anyone in Plaintiff's community in North Carolina, including her own friends, family, or other associates. To this end, Plaintiff has not alleged facts showing that any of the alleged statements actually harmed her reputation in the community.

23

None of these purported statements satisfy the requirements for defamation because Plaintiff does not provide the dates the statements were made, to whom the statements were made, and where the statements were made. The mere possibility that such statements were made is insufficient to state a defamation claim.[7] Plaintiff's allegations fail to establish a claim of defamation against any Defendant.

### Intentional Interference with Inheritance

Plaintiff's second cause of action is for intentional interference with inheritance. ECF No. 41 at 12. Plaintiff alleges that, after John Sr. passed away, Plaintiff expected some form of inheritance as she was aware that he had several hundred thousand dollars in assets at the time of his death. *Id*. Plaintiff contends that Defendants intentionally interfered with that expectancy by (1) misrepresenting the truth to the Probate Court; (2) rummaging through the decedent's home to get a first option at heirlooms, jewelry, cash, and other valuables, (3) lying in John Sr.'s obituary; and (4) lying to the Probate Court by attempting to exclude John Sr.'s biological children from their rightful inheritance. *Id*. at 13. Plaintiff asserts that her expectancy of the inheritance would have been realized but for the interference because Plaintiff is John Sr.'s biological daughter and was part of the last will and testament that she asserts was stolen. *Id*.

---

[7] To the extent any of the purported statements were made during the course of or in relation to the Probate Court proceedings, they would be privileged. "Under South Carolina law, an absolute privilege exists as to any utterance arising out of the judicial proceeding and having any reasonable relation to it, including preliminary steps leading to judicial action of any official nature provided those steps bear reasonable relation to it." *Belton v. W. Marine, Inc.*, C/A No. 0:16-cv-3347-TLW-SVH, 2017 WL 1373374, at *2 (D.S.C. Jan. 17, 2017) (cleaned up) (citations omitted), *R&R adopted by* 2017 WL 1353755 (D.S.C. Apr. 13, 2017); *see also In re Jasper Pellets, LLC.*, 652 B.R. 262, 273 (Bankr. D.S.C. 2023); *Redfearn v. Pusser*, 280 S.E.2d 206, 206 (S.C. 1981) ("We have held that defamatory matter contained in pleadings filed according to law in a court having jurisdiction, if relevant and pertinent to the issues in the case, is absolutely privileged.").

24

"South Carolina has yet to recognize intentional interference with inheritance rights as a valid cause of action." *Meehan v. Meehan*, C/A No. 2006-UP-088, 2006 WL 7285712, at *3 n.3 (S.C. Ct. App. Feb. 10, 2006); *see also Douglass ex rel. Louthian v. Boyce*, 519 S.E.2d 802, 807 (S.C. Ct. App. 1999) ("South Carolina has apparently never recognized a claim for interference with inheritance rights."), *aff'd*, 542 S.E.2d 715 (S.C. 2001).[8]  However, other judges in this district court have predicted that the state courts would recognize such a tort:

> [I]n *Wellin v. Wellin*, 135 F. Supp. 3d 502 (D.S.C. 2015), another judge in this district predicted that South Carolina would recognize a cause of action of intentional interference with inheritance.  The court cited to South Carolina Supreme Court dicta, which favorably discussed the tort.  *See Douglass ex rel. Louthian v. Boyce*, 542 S.E.2d 715, 717 n.4 (S.C. 2001) (noting the court had "adopted the closely analogous tort of intentional interference with prospective contractual relations" and citing to other jurisdictions that recognize intentional interference with inheritance, but declining to reach the issue because the plaintiff in that case was owed no duty by the defendant).
>
> *Douglass* laid out the following elements for the tort: "(1) the existence of an expectancy (2) an intentional interference with that expectancy through tortious conduct (3) a reasonable certainty that the expectancy would have been realized but for the interference and (4) damages." *Id.*

*McKee v. Lincoln Nat'l Life Ins. Co.*, C/A No. 0:21-cv-0499-MGL, 2022 WL 2919049, at *3–4 (D.S.C. July 25, 2022) (noting "that the available state law in this case is sufficient to hold that the South Carolina Supreme Court would likely adopt the tort of intentional interference with inheritance and require plaintiffs to prove the elements set forth in *Douglass*").

---

[8] The state appellate courts of South Carolina have consistently declined to explicitly adopt this tort but also have declined to reject it outright.  *See, e.g., Malloy v. Thompson*, 762 S.E.2d 690, 692 (S.C. 2014) ("[T]his opinion must not be understood as either adopting or rejecting the tort of intentional interference with inheritance").

Assuming that a claim for intentional interference with inheritance can be asserted under South Carolina law, Plaintiff's claim fails for a number of reasons. First, Plaintiff has not alleged facts showing that she was a named beneficiary under the will, which she alleges was stolen. Plaintiff also has not alleged facts showing that the Probate Court made a determination that she was a legal heir under the intestacy laws of South Carolina. In the absence of allegations showing that Plaintiff had a legally recognized right to inherit from the Estate, she is unable to establish a claim for intentional interference with inheritance. "[P]robate courts have the authority to determine paternity for the purpose of determining heirs," *Neely v. Thomasson*, 618 S.E.2d 884, 887 (S.C. 2005), and this Court does not have jurisdiction or authority to review those determinations made by the Probate Court. Plaintiff's allegations suggest that John Sr.'s parentage was challenged by various Defendants during the Probate Court proceedings. But Plaintiff does not allege that the Probate Court—or any court—determined that Plaintiff was a descendant of John Sr. entitled to an inheritance under the South Carolina intestacy statute or that she was a beneficiary under any will. Although Plaintiff alleges that she was the biological child of John Sr., she has not alleged that she is a statutory beneficiary having been adjudicated the biological child of John Sr. by a South Carolina court. *Douglass ex rel. Louthian*, 519 S.E.2d at 806. Paternity decisions are within the jurisdiction of the Probate Court under such circumstances. *See* S.C. Code Ann. § 62-1-302 ("The probate court has jurisdiction to hear and determine issues relating to paternity, common-law marriage, and interpretation of marital agreements in connection with estate, trust, guardianship, and conservatorship actions pending before it . . ."); *Thomas v. McGriff*, 368 S.C. 485, 488, 629 S.E.2d 359, 360 (2006) (explaining "the probate court has jurisdiction to resolve the issue of paternity when the issue is essential to the probate court's determination of heirs"). Accordingly, Plaintiff has "failed to state a claim because [she] did not

26

allege a factual basis establishing [her] prospective inheritance or any specific inter vivos gift." *Beren v. Ropfogel*, 24 F.3d 1226, 1230 (10th Cir. 1994) ("The jurisdictions that have recognized the intentional interference cause of action have done so in cases involving plaintiffs who had a tangible basis to assert a prospective inheritance, such as being an heir at law of the decedent or having been named in a prior will or testamentary instrument.") (collecting cases).

Further, Plaintiff could have asserted her tort claims in the Probate Court. South Carolina probate courts "have jurisdiction over tort actions when those actions are related to estates of decedents." *Matthews ex rel. Est. of Matthews v. Matthews*, No. 2010-UP-361, 2010 WL 10080099, at *3 (S.C. Ct. App. July 12, 2010) (collecting cases). "That the witnesses and other evidence needed to establish [Plaintiff's] tort claims would be duplicative of that already heard in the will contest illustrates one reason why the federal court jurisdiction over probate matters risks 'interfere[nce] with the probate proceedings.'" *Beren*, 24 F.3d at 1229 (quoting *Markham,* 326 U.S. at 494).

Additionally, Plaintiff's allegations that Defendants engaged in interference with inheritance are foreclosed because much of Defendants' alleged conduct occurred in pursuit of their legal rights (i.e., inheritance under the intestacy laws of South Carolina) in the Probate Court proceedings. "Liability for tortious interference with contractual and inheritance rights does not exist when the alleged tortfeasor's conduct was engaged in pursuant to a legal right, even if the elements of the torts are otherwise satisfied." *S. Texas Wildhorse Desert Invs., Inc. v. Texas Com. Bank-Rio Grande Valley, N.A.*, 314 B.R. 107, 126 (S.D. Tex. 2004). Although the record from the Probate Court proceedings are not presently before this Court, it is apparent from Plaintiff's allegations that Defendants' actions during those proceedings, which Plaintiff characterizes as

interfering with her own inheritance rights, are properly characterized as pursuing Defendants'
own competing inheritance rights.

### Civil Conspiracy

To state a civil conspiracy claim, Plaintiff must allege four elements: "(1) the combination
or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful
means, (3) together with the commission of an overt act in furtherance of the agreement, and (4)
damages proximately resulting to the plaintiff." *Paradis v. Charleston Cnty. Sch. Dist.*, 861 S.E.2d
774, 780 (S.C. 2021). Plaintiff "must plead additional acts in furtherance of the conspiracy
separate and independent from other wrongful acts alleged in the complaint, and the failure to
properly plead such acts will merit the dismissal of the claim." *Hackworth v. Greywood at
Hammett, LLC*, 682 S.E.2d 871, 875 (S.C. Ct. App. 2009) (citations omitted), *overruled on other
grounds by Paradis*, 861 S.E.2d 774.[9] Stated differently, "[w]here the particular acts charged as a
conspiracy are the same as those relied on as the tortious act or actionable wrong, plaintiff cannot
recover damages for such act or wrong, and recover likewise on the conspiracy to do the act or
wrong." *Todd v. S.C. Farm Bureau Mut. Ins.*, 278 S.E.2d 607, 611 (S.C. 1981) (quoting 15A
C.J.S. Conspiracy § 33, at 718), *overruled on other grounds by Paradis*, 861 S.E.2d 774; *see also
Coker v. Norwich Com. Grp., Inc.*, C/A No. 3:20-cv-03071-MGL, 2021 WL 4037472, at *6
(D.S.C. Sept. 3, 2021) (dismissing a civil conspiracy claim because the plaintiff "merely

---

[9] *Paradis* eliminated a requirement to plead special damages but not the requirement to
plead additional acts in furtherance of the conspiracy separate and independent from other
wrongful acts alleged in the complaint. *See Paradis*, 861 S.E.2d 779; *see also Jinks v. Sea Pines
Resort, LLC*, C/A No. 9:21-cv-00138-DCN, 2021 WL 4711408, at *3 (D.S.C. Oct. 8, 2021)
(explaining the South Carolina Supreme Court in *Paradis*, 861 S.E.2d at 780, explicitly abolished
the requirement the plaintiff to plead special damages").

reincorporated his previous claims and added conclusory allegations the Individual Defendants were engaged in a civil conspiracy").

"A plaintiff cannot avoid pleading separate and independent acts in furtherance of the conspiracy by simply couching the conspiracy claim as an alternative to other causes of action asserted in the complaint." *R.L. Mlazgar Assocs., Inc. v. HLI Sols., Inc.*, C/A No. 6:22-cv-04729-JDA, 2025 WL 2224039, at *8–10 (D.S.C. Aug. 5, 2025) (citing *Jinks*, 2021 WL 4711408, at *4). Where a plaintiff has not identified "additional acts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint," *Hackworth*, 682 S.E.2d at 875, she has failed to state a valid claim for civil conspiracy, *Doe 9 v. Varsity Brands, LLC*, 679 F. Supp. 3d 464, 494 (D.S.C. 2023).

Plaintiff's allegations fail to establish a claim for civil conspiracy. Plaintiff's claim for civil conspiracy should be dismissed because the Complaint's allegations merely incorporate the prior allegations without pleading additional facts in furtherance of the conspiracy apart from those pled to support the prior claims. *See Coker*, 2021 WL 4037472, at *6 (holding that the plaintiff's civil conspiracy claim failed because he "merely reincorporated his previous claims and added conclusory allegations that the Individual Defendants were engaged in a civil conspiracy"); *see also Code v. adidas Am., Inc.*, C/A No. 6:23-cv-4997, 2024 WL 637356, at *4 (D.S.C. Jan. 11, 2024) ("While this Court recognizes the incorporation of facts throughout a complaint is a common practice in pleadings, the drafter of the complaint must still connect those facts with the necessary elements of the claim to put a defendant on sufficient notice of the allegations asserted against him."). Plaintiff has merely incorporated by reference the alleged acts of Defendants in her other claims and added conclusory allegations that Defendants were engaged in a conspiracy. *See Doe 9 v. Varsity Brands, LLC*, 679 F. Supp. 3d 464, 494 (D.S.C. 2023) (dismissing civil conspiracy

29

claim where the plaintiff "merely summarized the allegations underlying her other causes of action and repackaged them into a claim for civil conspiracy"). Thus, because Plaintiff has failed to plead "additional facts," her civil conspiracy claim is subject to dismissal. *See State Farm Life Ins. Co. v. Murphy*, 260 F. Supp. 3d 497, 504 (D.S.C. 2017).

### Fraud

Plaintiff's fourth cause of action is for fraud. ECF No. 41 at 13. Plaintiff contends "Defendants made multiple representations of fact throughout" the Probate Court proceedings including that John Sr. wished both Plaintiff and Tassy to have a few hundred dollars; that Defendants would open a probate estate; that Patricia had lived with John Sr. until his death; that Plaintiff and Tassey were not John Sr.'s biological children; and that Quenithia was John Sr.'s biological daughter. *Id*. at 14. Plaintiff asserts that these "representations of 'facts' by the Defendants were completely false," that they were material to the Probate Court action and "affected the probate estate and the possible inheritance owed to Plaintiff," that Defendants knew or should have known that such representations were false, that Defendants made such representations with the express intent that such representations be acted upon by the Probate Court, that the Probate Court was ignorant of the falsity of the representations, that the Probate Court relied on the truth of the representations and had a right to rely thereon. *Id*.

> To establish a fraud claim in South Carolina, Plaintiff must plead facts sufficient to show nine elements: "(1) a representation of fact; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury." *Schnellmann v. Roettger*, 645 S.E.2d 239, 241 (2007).

30

*Otts v. Al Jazeera Int'l (USA), Inc.*, C/A No. 2:16-cv-3957-RMG, 2017 WL 11577541, at *3 n. 2 (D.S.C. Jan. 23, 2017).

Here, Plaintiff has not complied with the Federal Rules' requirement that she plead fraud with particularity. *Reynolds v. United States Gov't*, C/A No. 7:22-cv-00178-FL, 2023 WL 5826901, at *25 (E.D.N.C. July 21, 2023), *R&R adopted by* 2023 WL 5350566 (E.D.N.C. Aug. 21, 2023); *see* Fed. R. Civ. P. 9(b). Rule 9(b) requires plaintiffs wishing to bring a fraud claim "to, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained by thereby." *Bakery & Confectionary Union & Indus. Int'l Pension Fund* v. *Just Born II, Inc.*, 888 F.3d 696, 705 (4th Cir. 2018) (citation and internal quotation marks omitted).

Further, Plaintiff's fraud claim is premised on her assertion that Defendants made various false statements to the Probate Court to influence the outcome of that court's decision. However, statements made by judges, attorneys, witnesses, or parties in the course of judicial proceedings, which have some relation thereto, are absolutely privileged. *Pond Place Partners, Inc. v. Poole*, 567 S.E.2d 881, 893 (S.C. Ct. App. 2002); *Corbin v. Washington Fire & Marine Ins. Co.*, 278 F. Supp. 393, 398 (D.S.C.) ("The absolute privilege attaching to judicial proceedings embraces . . . any statements made by witnesses in the course of the proceedings . . ."), *aff'd*, 398 F.2d 543 (4th Cir. 1968).

### *Breach of Fiduciary Duty*

Plaintiff's fifth claim is for breach of fiduciary duty. ECF No. 41 at 14. Plaintiff alleges that Patricia was named as the executor of the Estate, and that Plaintiff is a beneficiary as John Sr.'s biological daughter. *Id.* at 15. Plaintiff contends that a personal representative owes a fiduciary duty to all beneficiaries of an estate under S.C. Code Ann. § 62-3-703(a). *Id.* Plaintiff

asserts that, under S.C. Code Ann. § 62-3-712, a personal representative is liability to interested

persons for damage or loss resulting from the breach of her fiduciary where she acts improperly in

connection with the estate. *Id*. According to Plaintiff, "Patricia breached that duty, with the help

of the remaining Defendants, by lying to the Probate Court and excluding [Plaintiff] from her

rightful inheritance from her biological father." *Id*.

> "To establish a claim for breach of fiduciary duty, the plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty owed to the plaintiff by the defendant, and (3) damages proximately resulting from the wrongful conduct of the defendant." *RFT Mgmt. Co., L.L.C. v. Tinsley & Adams L.L.P.*, 732 S.E.2d 166, 173 (S.C. 2012). South Carolina law provides that a personal representative owes a fiduciary duty to all beneficiaries of the estate, and is liable to interested persons for damage or loss resulting from a breach of that duty. S.C. Code Ann. §§ 62-3-703; 62-3-712; *see also Turpin v. Lowther*, 745 S.E.2d 397, 401 (S.C. Ct. App. 2013). The Code provides:
>
>> A personal representative has a duty to settle and distribute the estate of the decedent in accordance with the terms of a probated and effective will and this code, and as expeditiously and efficiently as is consistent with the best interests of the estate. He shall use the authority conferred upon him by this code, the terms of the will, and any order in proceedings to which he is party for the best interests of successors to the estate.
>
> S.C. Code Ann. § 62-3-703(a).

*Livingston v. Sackett*, C/A No. 3:16-cv-1591-MGL-PJG, 2017 WL 3328190, at *5 (D.S.C. July

17, 2017), *R&R adopted by* 2017 WL 3310989 (D.S.C. Aug. 3, 2017), and 2017 WL 3394597

(D.S.C. Aug. 8, 2017).

As noted, Patricia is now deceased and Plaintiff has not named a substitute party, such as

the personal representative or the estate. Thus, Plaintiff's claim is without merit as to Patricia on

this basis.

32

Further, Plaintiff has not alleged facts showing that Patricia owed her a fiduciary duty. "Pursuant to the probate code, a personal representative owes a fiduciary duty to all beneficiaries of the estate." *Turpin v. Lowther*, 745 S.E.2d 397, 401 (S.C. Ct. App. 2013). Although Plaintiff alleges that she was a beneficiary by nature of being a biological daughter of John Sr., Plaintiff has not alleged facts showing that she was named as a beneficiary under any will (which she alleges was stolen) nor has she alleged facts showing that any court of South Carolina adjudicated her a legal heir under the intestacy laws. *Douglass ex rel. Louthian v. Boyce*, 519 S.E.2d 802, 806 (Ct. App. 1999) ("William was not a statutory beneficiary because he had never been adjudicated the biological child of Christopher."), *aff'd*, 542 S.E.2d 715 (S.C. 2001). Thus, Plaintiff has not shown that Patricia owed her a fiduciary duty.

Also, Plaintiff has not alleged facts showing that any other Defendant owed a duty of care to Plaintiff arising under law. *Livingston*, 2017 WL 3328190, at *8 ("While a personal representative of an estate has certain duties under South Carolina law, the court is not aware of any such duties imposed on those not legally appointed to represent the estate."); *Otts v. Al Jazeera Int'l (USA), Inc.*, C/A No. 2:16-cv-3957-RMG, 2017 WL 11577541, at *2 (D.S.C. Jan. 23, 2017) ("Plaintiff cannot recover for the breach of a fiduciary duty that did not exist."). Thus, to the extent Plaintiff is asserting a claim for breach of fiduciary duty against any Defendant other than Patricia, such claim is subject to dismissal.

### *Negligence Per Se*

Plaintiff's sixth claim is for negligence per se. ECF no. 41 at 15. Plaintiff alleges that Patricia, as the named executor of the Estate, owes a duty to Plaintiff as a beneficiary and John Sr.'s biological daughter. *Id*. Plaintiff asserts that Patricia breached that duty "with the help of

33

the remaining Defendants" by lying to the Probate Court and excluding Plaintiff from her rightful inheritance. *Id.*

> To state a claim for negligence per se under South Carolina law, a plaintiff must establish facts showing two elements: (1) that the defendant owes the plaintiff a duty of care deriving from a statute and (2) that the defendant violated the statute and therefore failed to exercise due care. *Whitlaw v. Kroger Co.*, 306 S.C. 51, 410 S.E.2d 251, 252–53 (1991) (per curiam); *Rayfield v. S.C. Dep't of Corrs.*, 297 S.C. 95, 374 S.E.2d 910, 914–15 (S.C. Ct. App. 1988). The first element requires the plaintiff to establish both "(1) that the essential purpose of the statute is to protect from the kind of harm the plaintiff has suffered; and (2) that [the plaintiff] is a member of the class of persons the statute is intended to protect." *Whitlaw*, 410 S.E.2d at 252 (internal quotation marks omitted).

*Johnston v. Anderson Reg'l Landfill, LLC*, 725 F. Supp. 3d 527, 541 (D.S.C. 2024). In her allegations regarding Count Six, Plaintiff does not identify any statute or regulation giving rise to a duty of care. Thus, Plaintiff cannot establish a claim for negligence per se. To the extent Plaintiff relies on the statutes referenced in Count Five, related to her claim for breach of fiduciary duty, such reliance would render Count Six duplicative. Courts have noted that where alternative claims for negligence per se and breach of fiduciary duty stem from the same facts and alleged duties, one should be dismissed as duplicative. *See, e.g., David v. Savage*, C/A No. 2:19-cv-3139-SAL, 2020 WL 12618896, at *5 (D.S.C. July 6, 2020).

Further, although Plaintiff alleges that Patricia owed a duty of care arising from her role as administrator of the estate, she has not alleged facts showing that any of the other Defendants owed her a duty of care arising from any statutory or regulatory provision. And, as previously noted, because Patricia is deceased, Plaintiff's claims are not properly asserted as she must bring any viable claims against the estate or representative of the estate, which she has not done.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, it is recommended that the district court **DISMISS** this action pursuant to 28 U.S.C. § 1915, without prejudice, without leave to amend, and without issuance and service of process.

**IT IS SO RECOMMENDED**.

s/William S. Brown<br>
United States Magistrate Judge

January 20, 2026
Greenville, South Carolina

*Plaintiff's attention is directed to the important notice on the next page.*

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).